Get ready for 22-1099. And Mr. McFarland. Yes, good morning your honors. My name is David McFarland. I represent the plaintiff Apelli's first wife of Stephen McAnulty, Betty McAnulty. And I want to start just very briefly explaining what we know as I stand here today. We know that Betty and Stephen got married, 1919. They had a couple kids, two beautiful kids, and in 2008 they got divorced. As part of that divorce, the family law court ordered Stephen McAnulty to maintain a $100,000 insurance policy naming Betty as the beneficiary. Sometime after that Stephen McAnulty remarried he remarried Melanie McAnulty. Sometime after that he purchased a life insurance policy from the Standard Life Insurance Company for just over $200,000 and he named not Betty as a beneficiary but Melanie McAnulty as the beneficiary. Then in 2020 Stephen McAnulty passes away. He dies. At that point Betty McAnulty makes some phone calls. She finds out that there's a $200,000 life insurance policy with the Standard, but she's not the beneficiary and this lawsuit ensues. Why this lawsuit? Why not a suit against the estate? Well, here's what I found. Let's hear that answer. AI has taken over the course. Maybe Siri knows. Given the information, given the information that I received from my client, I suspected there wouldn't be a penny available in a probate case. In other words, there was no, there, but my suspicion was there is no probate estate because Stephen McAnulty and Betty owned a house together as joint tenants. So that asset didn't go into probate. It went directly outside of probate to Melanie. Same thing. Did they have a joint checking account? I would imagine they did, but that joint checking account doesn't go into probate. It goes directly, bypassing probate, goes directly to Melanie McAnulty. Now, as I mentioned in one of my filings, we subsequently initiated a probate case and lo and behold, we found out exactly what I thought was the case. No assets. Okay. So the bottom line here is what you're seeking is some priority over other creditors, in particular, the new wife, essentially, to an asset of the husband. And that's, that's why you're seeking an equitable remedy here rather than the usual lawsuit for breach of a promise, right? Well, it's the only remedy that I know that might be available. Yes. And all I really want is an opportunity to discover evidence. What's out there? What happened? As we sit here today, we don't know whether this standard policy, whether, we don't know whether Betty was ever a beneficiary on this policy. We don't know whether it was, it could be considered a replacement policy. We don't know anything about this policy, about what Stephen did. Did he ever have a policy that complied with the family court order? We don't know. We didn't get disclosure and we didn't have any chance for assuming that you would have to trace. I, no, I, well, there has to be, I think, some tracing. My reading of the restatement says under circumstances like this, and the restatement recognizes this situation specifically in illustration 26, you have to relate, you have to relate this situation specifically by a stopple theory that doesn't require tracing. Well, I don't know if it, I don't know if it doesn't require tracing or relaxes that tracing element. Okay. I mean, I can see. It doesn't require tracing. I'll answer your question. But what surprises me, though, is the court did not have its attention brought to that illustration. 24 was it? 26. No, I mean, the earlier was 24. 22. 22. Thank you. Which essentially did require tracing. Did you not allege the possibility that this was a replacement in your complaint? Why didn't the Well, hindsight is always 20-20, and if I could go back today and do it differently, I would argue things a little bit. Okay, but that was not alleged in the complaint originally, that there might be trace, that it might be traceable. No, the complaint doesn't talk about tracing because the Scott case doesn't talk about tracing either. I didn't search last night and look for tracing. It doesn't talk about tracing. Well, the Scott case, it was the policy that he got in response to the divorce decree, and he later changed the beneficiary. So, I mean, there's obvious tracing in Scott. It's the same policy. I don't know if it's obvious tracing in, but it is the same policy in Scott. Okay. You can certainly trace that. Now, when I read the Scott opinion, did that portion of the Scott opinion, did it suggest to me that this tracing element was the key element on which this Scott was deciding this case? No, there's no mention of tracing. They don't, Scott doesn't say, hey, we're making this decision because of our ability to go from here to here on this specific policy. But it's a significant fact. Let me ask you this. You have a divorce decree, and it says it has an obligation to purchase and maintain insurance in the name of Betty for a certain amount. Didn't Betty have all these years to go back into court and enforce that decree? I mean, you know, it's a court order, and it has teeth. Yeah. I'll say I think it's unfortunate. Betty decided that she could simply have communications with her ex and the father of her children, and the guy who was making his monthly support payments, as I understand it on time, at the date of his death. Hey, I mean, you've got a policy, right? You've got a policy for me? Yeah, we've got a policy. I have a piece of paper. It's not part of the record because this was on the motion to dismiss, where Stephen actually tells her, yeah, of course, I've got the policy. So should, again, in hindsight, should Betty have said, well, show me proof, send me a certification. I don't believe you. I'm going to go back to Colorado and try to sue you, or I'm going to sue you in Missouri. Sure, absolutely. Okay, and then if I may indulge my final question, why shouldn't we certify this to Colorado and say, you tell us whether you would adopt the deed by estoppel theory? It's certainly an option. I don't think it's necessary. We know now about the restatement. We know illustration 26. We've got half a dozen or more cases that support illustration 26. There's no doubt that illustration 26 is exactly the situation we have here, and the framers, the drafters of the restate came to the determination that someone like Betty, first wife, has an equitable, unjust enrichment, constructive trust claim under those circumstances. Equitable lien, not constructive trust. They changed the language. Isn't the language equitable lien? Well, I think the Scott language is constructive trust, and many of the other cases that I've read talk about constructive trust. But the restatement, didn't it talk in terms of, didn't it change the language from constructive trust to equitable lien? I don't know of that. I thought it did. Well, I actually had a related question to that because illustration 26 talks about, as you point out, relaxing ordinary tracing rules and relying on other doctrines of equity. So the illustration seems a little open-ended. So I guess I am interested in what doctrines of equity are we talking about here, if the illustration doesn't specify what they are. Or does it matter at this point? Well, I don't know that it's clear to me. I mean, the restatement takes a position, you know, they do this, you know, the real property doctrine of equitable trust, which is a very useful analogy. When a decedent acquires subsequent insurance that comes within the terms of the previous promise, the decedent may be estopped, assuming a hypothetical contest at the point between claimant and decedent to deny claimant's rights as a beneficiary. The rights acquired by estoppel give the claimant an equitable interest in the subsequently acquired policy, unenforceable against the decedent or enforceable against the decedent during the decedent's lifetime and against a successor not qualifying as a bona fide purchaser. That's one equitable principle that seems to be in play, estoppel. And I guess the sense that I had in reading these and reading the cases that discuss it is this overriding sense of fair play and justice that is the foundation of our equitable principles. Do you need illustration 26 to prevail in this? Well, let me set that up a little bit more. You were talking about Scott versus Scott, but there are other Colorado cases that talk about tracing. And I'm thinking of a case like Lewis against Lewis. And if tracing is required for you to succeed on this appeal and you don't have the benefit of illustration 26, why wouldn't we affirm under those circumstances? Well, because we don't know. We don't know if this standard policy at one point earlier was what I'll call the policy that Stephen McAnulty purchased and named betting as a beneficiary. That's one reason. There's also a talk in the restatement about is it a replacement policy? I don't know if this insurance was purchased through a work program or something else, or whether there's other facts that would allow an argument that it's a replacement policy. Because again, we don't have any discovery. Well, okay. Going back to my question, I start out by asking if you need illustration 26. Are you saying you don't necessarily even need it to succeed on appeal? I don't know. I mean, well, I don't think I need it to prevail on this appeal, but we don't know what the underlying facts are. And if we don't have guidance- Well, I'm not talking about what's going to happen if the case goes forward. I'm just talking about what we're dealing with right now. And well, let me put it this way. Why would the Colorado Supreme Court relax the tracing requirements? It has recognized and adopt illustration 26. That hasn't happened. Well, I don't know that the court has ever had an opportunity to do that, but I can think of all sorts of good reasons why it should and would. Drawing this- Well, what are one or two? Yeah, yeah. Drawing a line that says if a family court order names a specific policy, and then the husband or the decedent changes the beneficiary, just the beneficiary of that, then you have an equitable claim. But if the husband or the decedent, I don't know, they're a little more sophisticated or savvy, there's some other change of circumstances, and they do the exact same thing, except they cancel that policy, and they move over to a different company, and they get a different $100,000 policy, and they name the wife as the beneficiary. That distinction, that tracing, why is that the key element? Isn't the key- Well, I think the key is what the restatement recognizes and what many of these other cases from a variety of other states recognize, which is this overriding sense of justice and fair play. We've got two people who are arguably innocent making a claim for the same funds, and first wife should not get bound simply because of a narrow line that is- But because of a narrow line, we should look at all of the facts and circumstances and decide in the interest of fairness and injustice, is it right or wrong? Thank you. I hope I don't get this name wrong. Mr. Ventola? Correct. Very good. That and 500. Samuel Ventola representing the appellee, Melanie McEnulty. So, counsel states in his opening when he says we know, and one of the things that he says we know is that after Mr. McEnulty remarries Mrs. McEnulty, he buys the policy. This statement by counsel is consistent with the complaint. The complaint at paragraphs 4 and 14 states that Mr. McEnulty did not obtain the policy benefiting Betty McEnulty. Did not obtain. So, counsel now says, well, we don't know. There could be something out there. Counsel is bound by his statement here and more particularly by the allegations of the complaint, and the allegations of the complaint clearly say that there was no policy purchased on behalf of Betty, but there was one on behalf of Melanie, and in fact in a different amount. So, there's no question here of discovery and so forth, and I have to correct the record on what counsel said about that. Counsel said there was no discovery, no disclosures. Not true. There were disclosures. We made disclosures, and the district court, I believe, opened up the case to discovery. I don't think any was done other than to receive disclosures, but disclosures were made, and there was never any complaint that there were not disclosures. So, there are disclosures specifically about any insurance policies obtained? We disclosed everything that had anything to do with insurance policy. Is that in the record then? It's not in the record because it was disclosures. Okay, yeah. But, yes, disclosures were made, but what is in the record is the district court's order, because I think I've assisted this. I think I asked the district court, hey, please rule in our motion that will make us do discovery, and district court says, no, you will do disclosures, and I believe discovery. So, it's not the case that he's been imposed upon this blind thing. First of all, again, they're bound by their complaint in resolving a motion to dismiss, and second, although it's not really important, the district court did order disclosures, and I believe discovery. So, if they're bound by their complaint, then they can't make a Scott argument because they don't have a situation where the policy obtained in response to the was amended to favor the second wife. Correct, absolutely. But, then the issue becomes if the Colorado Supreme Court would adopt the restatement with respect to illustration needs 26, and the, what I'll call the deed by estoppel theory. So, there's absolutely nothing within the law of the Colorado courts, Colorado Supreme Courts, Colorado Court of Appeals, or this court's decisions interpreting Colorado law that would suggest that Colorado would open itself up to that kind of just principle-less, I don't know if that's a word, resort to, quote, equity in any case where somebody got some money that somebody else would like. Well, didn't the Colorado, was it the Colorado Supreme Court and Scott, or was that the Court of Appeals? The Court of Appeals was Scott, and Lewis, which your Honor mentioned earlier, was Supreme Court. Right, okay, but doesn't Scott cite to restatement 48? It doesn't cite the restatement third, and I'm not sure what section of previous restatements it cites, but I don't think it cites the principle that this illustration relies on. Has the Colorado Supreme Court ever refused to follow the restatement? Well, so far they haven't done it. I don't know that they're called upon to. But they have a history, probably because they've had a couple justices on the Colorado Supreme Court as members of the Council of the American Law Institute, but they have a history of following the restatements, do they not? But not when the principle is announced in a restatement that's completely at odds with Colorado. Well, we'll give an example of that. Where they did that, where they said this principle stated in the restatement is interesting. I don't know, then, your Honor. Because my chambers looked into how controversial this illustration was, and there's nothing in, when these restatements are produced, they go through years of vetting by professors and judges and practitioners and so on, and you get multiple versions of a draft provision. You get stuff in the reporter's notes. Sometimes people write law review articles, sometimes supporting it, sometimes opposing it. There's not one question raised by anyone regarding this illustration that was there from, I think, the first draft of that provision. If nobody, all these people who are experts in the field, and generalists also, if nobody raised an issue about this, why do you think the Colorado Supreme Court would feel a need to reject it? Because Colorado made absolutely clear that it's not going to rely on this unprincipled approach. And when I say unprincipled approach, the authors of the restatement admit that it's an unprincipled approach. I cite it in our supplemental brief, the section of the requisement where they say they're treating the concept of unjust adjudication as lacking any reliable indicators of the nature and scope of liability, of being something that's, where you can't tell what role the principle would play in the legal system, and it can be usefully described without insisting on answers to any questions. Are you quoting from a case? No, Your Honor. I'm quoting from section restatement note one, page four of the third restatement, where there's describing... Is this one of the comments or reporters? It looks like it's a note, Your Honor. It's cited in the supplemental brief. Well, you just said, though, that Colorado's made clear that it wouldn't adopt the illustration. Could I just... I'm interested, is there a case you have in mind where you say the court has made clear? That suggests there's a case where it's made this clear. I mean, I think it's shown in Willis v. Willis. I think it's shown in Scott v. Scott, and it's shown by this court's decisions in Foster v. Kinsler. Well, what's shown is that, in an easier situation, when there is tracing, they'll adopt this, and the restatement explains that it is extending that in this illustration. It gives us an example when you promise, when you sell somebody some property that you don't own, and then you acquire that property. This is, I think, an accepted principle in real estate transactions, and then you acquire that property. There's an equitable lien on it that's owned by the person you sold it to before you had it. What this court has done, and what the Colorado Supreme Court has done, is say there are elements that must be met for recovery. They don't say, we're going to allow equitable recovery whenever it seems nice. They say, you have to meet these elements, and there's a set forth in the Foster v. Kinsler case, there's a set forth in the Willis v. Willis case, and I don't know of any Colorado case ever that said, we used to have these requirements, we used to have these elements, but because a recent statement article said something different, we're going to change it. Well, there are different theories. These cases are decided on constructive trust, and typically for constructive trust, you have to trace, right? But what Judge Hartz was just asking you about is a theory that's similar to Deed by Estoppel, which Colorado has adopted when it adopted the UCC in the context of personal property. So Colorado recognizes Deed by Estoppel not just in real estate, but also for personal property under the UCC. So couldn't we look at that and say Colorado very likely will also recognize this theory in this context? I don't know of a Colorado case that says Deed by Estoppel, that we're going to take property that somebody legitimately acquired and give it to somebody else, when there's no argument here that the insurance policy that benefited Melanie McEnulty was not a valid and legally enforceable insurance policy. The complaint by appellant is that, well, he didn't buy another policy representing my client. But that's not a matter. Are you saying Colorado would reject the proposition of Deed by Estoppel? No, I'm saying this is different than that. I'm saying this is not a case where somebody received an improper deed because of a lack of ownership. This is a case where somebody properly received the benefit. Somebody received a deed by improper ownership? That's my understanding of your reference. No, you don't have property. You sell it to somebody when you don't have it. Then you get the property. The person you sold it to when you didn't have it now has a lien on that property. So why is that not any different from here? You buy it, you don't have the insurance policy. Go ahead, respond. The person who did that, who's a bad actor, did a bad act of selling property that he didn't own. And the Colorado cases say a wrongful act can be the basis for a claim. So isn't there a wrongful act here? No, there's no wrongful act. There's not a wrongful act not getting the policy that you promised, that you were ordered to get? But that's not an issue that involves Melanie McEnulty. She was not involved in his failure to do that. And I will point out that your Honor. That's the point Judge McHugh was making. Somebody was making earlier about a couple of innocent parties and who should bear the loss in the circumstances. So what the remedy was, and the counsel says there's nothing in the record about it. The counsel says they tried to pursue probate. But as Judge McHugh says, the remedy was to enforce with that court, in Missouri, that to make sure that the policy that was supposed to be ordered was obtained. Apparently it never was. But that's the remedy, is to make sure that you're getting enforcement of the court. And frankly, what's going on here is the appellate attempting to involve the federal court. So isn't the remedy when somebody sells property they don't own to check and see if the person has title? You can make that argument in all these cases, I suspect. But if you had a case like that, your Honor, where that person sold that property and didn't have it, but sold property that they did have to another person, you wouldn't go to the other person and say, hey, you've got property and they didn't. I'm going to take your property or some part of your property and give it to this other person. That would be the equivalent of doing what the appellate's trying to do here. She was never given a policy that belonged to Betty McEnulty. She was given a policy that was about her. So you don't go, and I gave a couple other scenarios in the supplemental brief. Like, for example, if you have two creditors, one of whom is paid and the other one isn't, you don't go to the creditor who was paid and say, give up some of your money for the guy who wasn't. Even if the guy who wasn't had a judgment, you don't do that. You don't go to two insurers who had a property damage claim, one of whom was paid and the other one was not. I think the situation you described happens all the time in Ponzi schemes, doesn't it? In Ponzi schemes? Well, if you can show the person was involved in a Ponzi scheme, that's not a good scenario. Well, it's deceit. It's not doing what you're promising. Anyway, I'm not sure. This really is a difficult issue. I'll give you another scenario. I don't have it in the brief. Here's another scenario. A person has two children. Say one of them is still a minor, and the person is still responsible for that person's care. You know, when an adult, the person buys an insurance policy benefiting one child, not the other. You don't go back and say, hey, you got an insurance policy, and the other one didn't. Well, but that's not a case where there's a court order requiring that person to have an insurance policy for the older child. I mean, that's the complicating factor here, is that, you know, the bad actor here is deceased. We have two innocent people who are both making claims to the same policy. Why shouldn't we ask, certify this to Colorado Supreme Court, and let them decide whether they want to adopt deed by estoppel in this instance? Here's one thing I agree with opposing, Councilor O'Connor. I don't think that's necessary, because I think we already know what Colorado law is. And that's the law that's binding on you, the Colorado law, and on the previous decisions of this court, and not to restrain you. And so because those authorities give us a clear answer, I don't think this route's for going with Colorado Council, could I just make sure I understand what the consequence might be if we disagree with you and determine that the dismissal and failure to state a claim was wrong? So under the statute... Well, let me just... I'm not quite done. So if this goes back to district court, there hasn't really, at that point, been any decision as to who gets the proceeds of the policy. At that point, these equitable doctrines would kick in. In other words, then the court could weigh these equities and make the decision. Is that correct? I think that's what the Scott decision did, is they remanded and they said, look and see who needs it more. And everybody comes to form out and says, I deserve it more than the other. And that's what you'd be opening every single payment to in the courts if you don't affirm this case. You'd be calling for cases to be decided in district court. Everybody goes before the court and says, I need this money. And that's... It's not what the law is, and it's not the proper thing to do in the courts. And I think it would call our courts as wise to read that today. Thank you, counsel. That's an interesting case. So, case is submitted. Counselor, excuse me.